IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-02238-PAB-NRN

ROBIN MCCLAIN,

    Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY, d/b/a Denver Health Medical Center, a political subdivision of the State of Colorado,

    Defendant.
_____

# ORDER
_____

This matter is before the Court on Defendant Denver Health and Hospital Authority d/b/a Denver Health Medical Center's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 16]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. BACKGROUND[1]

This lawsuit arises out of plaintiff's sexual assault while she was a patient in the Intensive Care Unit ("ICU") at Denver Health and Hospital Authority ("Denver Health"). *See* Docket No. 13 at 1, ¶ 1. On July 21, 2016, plaintiff sustained a traumatic brain injury in an automobile collision that left her in a coma for forty-three days. *Id.* at 3, ¶ 10. At some point, plaintiff was admitted to Denver Health's ICU for treatment. *Id.*, ¶ 9.

Plaintiff alleges that Denver Health had a policy, practice, or custom of allowing

---

[1]The facts stated below are taken from plaintiff's first amended complaint, Docket No. 13, and are presumed to be true for purposes of this motion to dismiss.

people to "access patients in its ICU 24 hours a day, seven days a week" without restriction. *Id.* at 6, ¶ 40. Patients in the ICU were left "alone in . . . unmonitored room[s]" and not provided with adequate security to protect them from assault. *Id.* at 6-7, ¶¶ 41-42. Plaintiff also alleges that there was a "pattern of violence" at Denver Health and that an "incapacitated patient ha[d] been sexually assaulted by Denver Health employees while at Defendant Denver Health's facility." *Id.* at 10, ¶¶ 66-67.

On or around September 16, 2016, plaintiff was sexually assaulted by an unknown male while she was a patient in the ICU. *Id.* at 4, ¶ 19. Plaintiff alleges that, at the time of the assault, she was "incoherent, would drift in and out of consciousness, . . . was unable to make sense of where she was or what was happening to her," and "was completely dependent on Defendant Denver Health to satisfy her basic human needs." *Id.* at 3, ¶¶ 11, 13. She alleges that Denver Health's policy or practice of allowing unfettered access to incapacitated patients in the ICU was the proximate cause of her sexual assault. *See id.* at 9-10, ¶¶ 57, 70.

Plaintiff filed this lawsuit on September 15, 2017. Docket No. 1. In her operative complaint, plaintiff asserts five claims for relief: (1) a claim for municipal liability under 42 U.S.C. § 1983; (2) a Fourteenth Amendment substantive due process claim pursuant to the special relationship doctrine; (3) a Fourteenth Amendment substantive due process claim pursuant to the state-created danger doctrine; (4) a state-law negligence claim; and (5) a claim under Colorado's Premises Liability Act, Colo. Rev. Stat. § 13-21-115. Docket No. 13 at 8-12. On November 27, 2017, defendant moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Docket No. 16. Plaintiff filed a response on December 18, 2017, Docket No. 20, to which defendant replied on December 29, 2017. Docket No. 22.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

## III. ANALYSIS

### A. Substantive Due Process Claim

Plaintiff alleges substantive due process claims under the Fourteenth Amendment based on defendant's failure to take adequate measures to prevent plaintiff from being sexually assaulted while in the ICU. The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This guarantee consists of both procedural and substantive components. "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). This includes "protect[ing] against the exercise of governmental power that shocks the conscience." *Id.*

State actors are "generally only liable under the Due Process Clause for their own acts and not for private violence." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). However, "there are two recognized . . . exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory." *Id.* Plaintiff asserts that both exceptions apply in this case. *See* Docket No. 13 at 8-9; Docket No. 20 at 3, 7.

#### 1. *Special Relationship*

The special relationship doctrine applies when there is a custodial relationship between the victim and the State. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 923 (10th Cir. 2012). A custodial relationship is established when the state "assumes

control over an individual sufficient to trigger an affirmative duty to provide protection to that individual . . . ." *Uhlrig*, 64 F.3d at 572. This requires "involuntary restraint by the government," *DeAnzona v. City & Cty. of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000), through "force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person." *Gray*, 672 F.3d at 924. The Supreme Court has explained the rationale underlying the special relationship doctrine as follows:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). In accordance with these principles, the Tenth Circuit has applied the special relationship doctrine to prisoners, individuals involuntarily committed to mental institutions, and children placed in state-run foster care, but not to schoolchildren or children in state-run summer camps. *See Gray*, 672 F.3d at 923 (listing applications of doctrine); *DeAnzona*, 222 F.3d at 1234 (listing "class examples" of the special relationship doctrine and holding that the doctrine did not apply to a five-year-old boy who drowned at a city-run summer camp).

Plaintiff argues that the special relationship doctrine applies in this case because, "at the time of her assault, Plaintiff was suffering from a traumatic brain injury" that rendered her "unable to make sense of where she was or what was happening to her." Docket No. 20 at 8. In other words, she suggests that, because she was completely dependent on hospital staff for her basic needs, there was a custodial

5

relationship between her and the state.

Plaintiff's argument fails for two reasons. First, the Tenth Circuit has interpreted the special relationship doctrine to require some affirmative act by the state to restrain a person's liberty. In *Gray*, for example, the Tenth Circuit held that a man who died while undergoing treatment for epilepsy at a state-run hospital "was not in the custody [of the state] at the time of his death because [the state] did not affirmatively act to place him there." 672 F.3d at 923. The court distinguished earlier applications of the special relationship doctrine in cases involving arrest, incarceration, institutionalization, and the involuntary placement of a child in foster care on the ground that those contexts all involved "state action involving force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person." *Id.* at 924.

It is true, as plaintiff points out, that *Gray* is distinguishable from this case because the patient in *Gray* "voluntarily checked himself into Defendants' hospital for medical observation and testing." *Gray*, 672 F.3d at 924; *see also* Docket No. 20 at 8. Here, in contrast, the allegations support a reasonable inference that plaintiff was either unconscious or unable to understand what was happening to her when she was admitted to Denver Health in July 2016. *See* Docket No. 13 at 3, ¶ 10 (alleging that "[o]n or around September 16, 2016, Plaintiff McClain was suffering from a traumatic brain injury caused by an automobile collision that occurred on July 21, 2016, which initially forced her into a coma for 43 days"). However, the Tenth Circuit in *Gray* emphasized that the special relationship doctrine requires an "affirmative act" by the government to restrain a person's liberty. *See Gray*, 672 F.3d at 923-24; *see also*

*DeShaney*, 489 U.S. at 200 ("[I]t is the State's *affirmative act* of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to protect his liberty interests by harms inflicted by other means." (emphasis added)). There is no indication in the complaint that defendant – as opposed to plaintiff's husband or a third-party ambulance – was responsible for plaintiff's admission to the hospital. And there are no allegations that, after plaintiff's admission, her husband did not have the ability to move her to another hospital. Accordingly, defendant "did not force [plaintiff] against [her] will to become dependent on [it]" or "prohibit [plaintiff] from seeking alternative sources of assistance for [her] condition," *Gray*, 672 F.3d at 924, even if, practically speaking, she was unable to do so.

Moreover, while an individual's dependency on the state may be a necessary element of the special relationship doctrine, *see DeAnzona*, 222 F.3d at 1234 ("The State has a special relationship with only individuals dependent completely on the state to satisfy their basic human needs." (internal brackets and quotation marks omitted)), it is not sufficient. In *Gray*, the Tenth Circuit concluded that there was no special relationship between the patient and the hospital even though the patient may have been "functionally dependent on his caretakers" at the time of his death. *See* 672 F.3d at 923, 924 n.12. Similarly, the Tenth Circuit has repeatedly rejected attempts to extend the special relationship doctrine to children not formally in state custody who are nevertheless harmed while under the care of government employees. *See, e.g.*,

7

*DeAnzona*, 222 F.3d at 1234-35 (holding that there was no special relationship between state and five-year-old boy who drowned while at government-run summer camp); *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992) (holding that "compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school"). In *DeAnzona*, the court specifically held that a child's extreme youth – though indicative of dependency – is not relevant to a determination of whether the special relationship doctrine applies. *See DeAnzona*, 222 F.3d at 1234 (noting that, while a child's "age may be a factor in whether the [defendants] were negligent, it is not a factor for whether a special relationship exists").

In summary, the Court finds there was no custodial relationship between plaintiff and defendant at the time of her sexual assault. Accordingly, defendant is entitled to dismissal of plaintiff's second claim for relief.[2]

### 2. State-Created Danger

Plaintiff alternatively seeks to establish liability under a state-created danger theory. *See* Docket No. 13 at 11. Under this theory "a state actor may be held liable for the violent acts of a third party if the state actor 'created the danger' that caused the harm." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002). A prima facie case under the danger creation theory requires a plaintiff to show that:

---

[2]Plaintiff also argues that the possibility that plaintiff was sexually assaulted by defendant's employee "creates a plausible claim for the existence of a 'special relationship.'" Docket No. 20 at 10. But plaintiff's allegations do not give rise to a reasonable inference that plaintiff was sexually assaulted by an employee. Nor does plaintiff cite any cases applying the special relationship doctrine based solely on the fact that the perpetrator of private violence was a government employee.

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience.

*Id.* at 1182-83. A plaintiff must also establish two "preconditions" to trigger application of the doctrine: "that the state actor engaged in affirmative conduct and that there was private violence." *Estate of B.I.C. v. Gillen*, 761 F. 3d 1099, 1105 (10th Cir. 2014).[3]

The Court need not reach plaintiff's prima facie case because plaintiff's failure to allege any relevant affirmative conduct by defendant is fatal to her claim. Plaintiff argues that defendant engaged in affirmative conduct by "(1) accept[ing] plaintiff into its care, (2) fail[ing] to ensure adequate security measures in place prior to confining Plaintiff to the ICU, and (3) allow[ing] unfettered access to Plaintiff while she was in a helpless and incapacitated state." Docket No. 20 at 4. However, both the Supreme Court and the Tenth Circuit have rejected the argument that the mere failure to protect constitutes an affirmative act sufficient to confer liability under the state-created danger doctrine. *See, e.g.*, *DeShaney*, 489 U.S. at 197-98 (rejecting argument that, as a result of the state's assurances that it would protect the child, "the State [had] acquired an affirmative 'duty,' enforceable through the Due Process Clause, to do so in a reasonably competent fashion"); *Gray*, 672 F.3d at 925-26 (holding that hospital was not liable under state-created danger theory for failing to protect plaintiff from harm,

---

[3]There is no dispute that plaintiff has adequately alleged private violence. *See* Docket No. 13 at 4, ¶ 19 (alleging that plaintiff was sexually assaulted by an unknown male).

despite hospital's repeated assurances of protection); *see also Briggs v. Johnson*, 274 F. App'x 730, 734 (10th Cir. 2008) (unpublished) ("Defendants' actions must involve affirmative conduct; the failure to act, even in the fact of a known risk, is insufficient."); *Taylor v. Kan., Dep't of Corrs.*, 2017 WL 1479375, at *6 (D. Kan. Apr. 25, 2017) (finding that prison warden could not be held liable for a prison nurse's sexual assault by an inmate under the state-created danger theory based on his failure to provide the nurse with an alarm or panic button or station an officer within hearing range).

The fact that defendant's alleged failure to protect plaintiff was due to its policy, practice, or custom of allowing unfettered access to patients in the ICU without adequate monitoring, *see* Docket No. 13 at 6-7, ¶¶ 39-43, further weighs against a finding of affirmative conduct. "Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183. However, a state's "adoption of generally-applicable policies and customs" does not satisfy this requirement because "[t]he act of establishing such policies and customs does not put any particular individual at substantial risk of serious, immediate, and proximate harm." *Gray*, 672 F.3d at 926 (internal quotation marks omitted) (holding that hospital's policy that "permitted its staff to leave patients experiencing ongoing, life-threatening seizure activity in the [Epilepsy Monitoring Unit] alone and unattended" was not "aimed at decedent directly, and did not pose a threat of immediate and proximate harm to him"); *see also Ruiz*, 299 F.3d at 1183 (holding that the improper licensure of a daycare facility did not constitute affirmative conduct because "it presented a threat of an

indefinite range and duration" and "affected the public at large").

Plaintiff contends that "[t]he fact that Defendant's acts arose from its own policies and/or customs does not relieve it of liability" because "[p]laintiff's physical and mental state . . . distinguishe[d] her from other patients" at the hospital. Docket No. 20 at 5. However, in determining whether plaintiff has alleged affirmative conduct – a requirement separate from the six-factor test stated above – the question is not whether plaintiff was a member of a limited and definable group, but whether defendant's conduct created an "immediate threat of harm" to plaintiff directly rather than a "threat of an indefinite range and duration" to the public at large. *See Ruiz*, 299 F.3d at 1183; *see also Gray*, 672 F.3d at 927 (explaining that "[t]he restrictive six-factor test . . . requires not only that plaintiff be a 'member of a limited and specifically definable group,' but also that defendant's conduct specifically 'put plaintiff at substantial risk of serious, immediate, and proximate harm'"). Like the Tenth Circuit in *Gray* and *Ruiz*, the Court finds that defendant's conduct falls into the latter category. That defendant's policies disproportionately impacted plaintiff due to her physical and mental state does not alter this analysis. *See Gray*, 672 F.3d at 927 (finding that the fact that "Defendants' policies and customs did not increase the danger to the public at large in any real sense, but rather to a defined group, namely, patients in the [Epilepsy Monitoring Unit] . . . [did] not undermine" the court's conclusion that the plaintiffs had failed to allege affirmative conduct). The fact remains that, "[a]t the time [d]efendant[] adopted the alleged policies and customs . . . , [plaintiff] was not an identifiable victim." *Gray*, 672 F.3d at 926.

Even assuming plaintiff's allegations are sufficient to establish affirmative action

11

on the part of defendant, the conduct alleged does not rise to the conscience-shocking level. The Tenth Circuit has stated that the "application of danger creation as a basis for § 1983 claims is reserved for exceptional circumstances." *Ruiz*, 299 F.3d at 1184. A plaintiff must therefore "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574. Allegations that the government "permitt[ed] unreasonable risks to continue" will generally be insufficient to satisfy this standard. *Ruiz*, 299 F.3d at 1184. In determining whether state action shocks the conscience, courts consider three factors: "(1) the general need for restraint; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policy decisions impacting public safety." *Briggs*, 274 F. App'x at 736 (quoting *Currier v. Doran*, 242 F.3d 905, 920 (10th Cir. 2001)).

Here, plaintiff alleges that defendant engaged in conscience-shocking behavior by allowing unfettered access to "its most vulnerable patients" despite knowledge that the hospital "had a history of violence." Docket No. 20 at 7. The Court agrees with defendant, however, that plaintiff's non-specific allegations regarding Denver Health's "history of violence" and the one prior instance of sexual assault on a patient, *see* Docket No. 13 at 6, ¶¶ 37-38, are insufficient to establish that defendant consciously disregarded a substantial risk to plaintiff in the ICU or engaged in conduct that would shock the conscience of federal judges. *Compare Ruiz*, 299 F.3d at 1184 (finding that defendants' failure to conduct background and insurance checks on daycare facility as required by state's licensing process did not rise above the level of negligence and thus

did not qualify as "conscience shocking"), *with Briggs*, 274 F. App'x at 735-36 (finding allegations sufficient to demonstrate conscience-shocking behavior where employees of state Department of Human Services "instructed at least one person to cease reporting ongoing" child abuse).[4]

Because plaintiff has failed to allege either affirmative conduct on the part of defendant or conscience-shocking behavior, defendant is entitled to dismissal of plaintiff's third claim for relief.

### 3. *Municipal Liability*

Defendant argues that it is entitled to dismissal of plaintiff's municipal liability claim because plaintiff has failed to demonstrate a violation of her substantive due process rights under the special relationship or state-created danger theories. *See* Docket No. 16 at 11. The Court agrees. A "*Monell* claim is not a separate, stand-alone claim." *Romero v. Bd. of Cty. Comm'rs for the Cty. of Curry*, 202 F. Supp. 3d 1223, 1267 (D.N.M. 2016). Rather, it "*extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that is has sanctioned, led to an independent constitutional violation." *Id.* Because plaintiff has failed to allege a constitutional violation, her municipal liability claim necessarily fails. *See id.* (finding

---

[4]Critically, plaintiff does not indicate what types of violence were common at Denver Health, whether any violence occurred at or near the time of plaintiff's hospital stay, whether the other patient who was sexually assaulted was a patient in the ICU at the time of the attack, or what the circumstances of that patient's sexual assault were. This information is relevant to whether defendant was aware of a substantial risk of sexual assault to patients in the ICU at the time of plaintiff's attack. On the other hand, plaintiff's allegation that defendant "stationed security personnel outside" of plaintiff's room after the attack, Docket No. 13 at 6, ¶ 33, has no bearing on whether defendant disregarded a known risk at the time of plaintiff's assault.

13

that plaintiff's *Monell* liability claim would fail if she could not "prove a constitutional violation in her other counts"); *see also Sigg v. Allen Cty., Kan., Bd. of Cty. Comm'rs*, 712 F. App'x 738, 740-41 (10th Cir. 2017) (finding that the defendant could not be liable under *Monell* "[a]bsent an underlying constitutional violation").

### B.  State Law Claims

Plaintiff's remaining claims arise under state law.  Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted).  This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits."  *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Plaintiff does not argue that the Court should retain jurisdiction over her state law claims if the federal claims are dismissed, and the Court does not find any compelling reason to do so.  Accordingly, plaintiff's fourth and fifth claims for relief will be dismissed without prejudice.  *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental jurisdiction over state-law claims, court "had discretion either to remand the claims to the state

court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Denver Health and Hospital Authority d/b/a Denver Health Medical Center's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 16] is **GRANTED**. It is further

**ORDERED** that plaintiff's first, second, and third claims for relief are dismissed with prejudice. It is further

**ORDERED** that plaintiff's fourth and fifth claims for relief are dismissed without prejudice. It is further

**ORDERED** that this case is closed.

DATED September 30, 2018.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge